Good morning, Your Honor. May it please the Court, my name is Stephen Preziosi. I represent Jason Taylor. Your Honor, may I reserve two minutes for rebuttal? Hopefully. Yes. Thank God for it. Your Honor, Congress stated that the purposes of passing Section 1591 into law are as follows. The purposes of this statute are to combat trafficking, a contemporary manifestation of slavery. That is what Congress stated in 1591, the scope of prohibited activity. The Tenth Amendment and this concept of federalism require that before a federal law is applied to a crime that is traditionally prosecuted by the states, Congress must give us some clear indication that they intended to occupy this area of law that is traditionally held, traditionally occupied, and crimes that are traditionally prosecuted by the states. Counsel, you're familiar with our decision in the Walls case? Yes. All right, so why isn't that binding on us as a three-judge panel that the Tenth Amendment argument, we can't accept it here, and if you want to continue to pursue it, you have to do it through an in-bank court or a Supreme Court? The facts are different. The facts are different, but we said in Walls that any individual instance of conduct regulated by 1591 need only have a de minimis effect on interstate commerce. Yes, so there's got to be two tests, Judge. It's not just the means of interstate commerce, just the Internet. We can't whitewash every local crime with the Internet. Why isn't Walls? Walls is different. Walls, the defendant there was running a prostitution ring. That is decidedly different than what happened in this case. I'm trying to figure out how the principle in Walls, our holding in Walls doesn't foreclose your argument. I appreciate your argument that you think this is a traditionally local crime, but how does Walls not foreclose that? We talked about Congress intending to use every ounce of the jurisdictional scope they have. Yes, the scope. And then there's this de minimis contact, which is what Judge Bennett mentioned. It sounds like you're not relying on an argument of the conduct here or the Internet connection. Your Honor, I'm looking for a clear indication in this statute, in 1591, that says, that Congress says, we intend to go into this area of law that is clearly traditionally occupied by the states. And here's the factual rub, Your Honor. So to just finish that thought, and forgive me for interrupting, but you think Walls is not controlling because it pertains to a different statute? Is that what you're saying? Well, for two reasons. One, it pertains to a different statute, and it is factually distinct from our case. Walls, we had the defendant running a prostitution ring. That's why it fell into the scope of these facts, this purpose that I started with. And if you look at page 20 of my brief, not only do we have the stated purpose of the statute, but we have Congress's findings of fact. And if you look at the findings of fact, the reason Congress passed this law, they are all thematically consistent with that purpose. We're passing a law to prevent contemporary manifestations of slavery. And all of those findings of fact are, you know, it's the parade of horribles, Your Honor. It's the forced labor, dragging women and children into prostitution, transporting them over borders. Those facts are very distinct. There is no contemporary manifestation of slavery in this case. It is factually distinct. Congress did not intend to intrude into this area of state law that is traditionally prosecuted by the state. Your Honor mentioned the interstate commerce. Your Honor, I want to argue that the means of interstate commerce, one, are an element of the crime, but that's only one half of the equation in a Tenth Amendment federalism analysis. The first half of the equation must be Congress's clear intent to intrude into the sovereignty of the state, to invade this area traditionally prosecuted by the state. This was a local crime. This was a, the government asserts, we deny, the government asserts that this was a local act of prostitution through the Internet. It was a local act of having relations with a minor. These are both crimes traditionally prosecuted by the state, not a federal law. And what I want to emphasize, Your Honor, is that the Internet cannot equal federal jurisdiction. It is a slippery slope that the Internet equals federal jurisdiction, Your Honor, that that means of interstate commerce would enwrap almost every local crime and make it a federal crime. And here's the reason why. Counsel, I mean, I'm fine with you using your time however you want, but in my view your argument is foreclosed by walls and you have to take it up to a higher body. I most respectfully judge I disagree. I disagree. It's helpful to figure out your time allocation. I just want to, in the interest of fairness, tell you that I have the same scorecard. I do. Respectfully, I must disagree, Your Honor. But I'll move on to, I'm going to move on. And you can use your time as you want, but we're trying to help this. All right. I'm going to move on to point three of my brief. My client's due process right gives him the right to present evidence to specifically negate an element of the crime and to confront the witnesses against him. My argument is that he did not have his due process right to a fair trial because the lower court precluded certain evidence that you'll see in Volume 3 of the sealed volume of the record. Mr. Kentzel, let me interrupt you again. Let's say hypothetically, and I will take this up with your friend, let's say hypothetically I agree with you that the district court's evidentiary rulings were error and that the evidence which you wanted to get in, the district court should have let in, given the government's choice as to how to phrase the indictment and the jury instructions in this case. The government's argued the district court was right, but even if not, it was harmless error. Why don't you give me your best argument as to why even if there were error here, it's not harmless either under the beyond a reasonable doubt standard or the lower standard the government says is applicable. It's not harmless, Judge, because he was prevented from presenting a defense. He was preventing from presenting for two reasons. He was prevented from presenting evidence that would negate the specific element of the crime, and specifically the element I'm talking about is to persuade, induce, entice, coerce that are found in both counts. That element is found in both counts. He can still be guilty on it's an or situation. There's several ways to prove that, correct? There are several ways to prove it. But even if he proved that she was not coerced and persuaded, there's still other ways he could have been found guilty, right? No, one of the elements is that she must have been persuaded, induced, enticed, or coerced. Right, it doesn't have to be coerced. It doesn't have to be any one. If they prove, for example, entice, that's enough. Any one, any one, well, you know, Judge. So in other words, the specific evidence that you wanted to offer seems to me to negate coercion, but not necessarily entice or persuade. No, I think they're quasi-synonymous, Your Honor. They're quasi-synonymous. Persuade, induce, entice, or coerce. Coerce, coerce, defined in the statute, defined in 1591, intimates threats of violence. There's threats of physical violence, threats of restraint. A homeless child where there's a right, they're going to withhold food or withhold rent money for the family or something like that, that would rise to the level of coercion as opposed to persuading, inducing. Whatever verb we want to use, Judge, that evidence would have negated that element. That's what I'm pushing back on. I agree with you that this evidence that you wanted to put in went to coerce, but I see overwhelming evidence of entice. There's just no question to me under this evidence that even if the minor was absolutely willing, the phone, the money, everything was enticing her to consummate the bargain for transaction. And let me respectfully disagree with that, Judge, because under the statute there must be a transformation of her will. Her will must be transformed. Looking at the evidence that's in the sealed volume, Your Honor, we have the nature of this website. She went on this website seeking this type of relationship, her profile. But she testified, right, at the trial? Yes, she did. And she said that your client didn't make her do anything. She showed up willingly. She wanted money. She asked for the phone. There was no transformation of her will, and this is what I'm getting at. Where is that in the jury instruction? I'm sorry? Where is that in the jury instruction? November 18th page, starting on page 20. No, it's in the jury instruction that there has to be a transformation of will. You know, I don't remember that was argued. That was argued at the hearing, the pretrial hearing, that there had to be a transformation of will. Are you familiar with the Dinkrad case? Yes, that's the case that defense counsels. It's not a matter of entrapment, right? We have to focus on the defendant's contract. That's the strong message from that case law. And it says, as long as the defendant's actions constitute persuading, inducing, enticing, or coercing, 2422B applies. Yeah, so he- What I'm suggesting, sir, is that I think you have a strong argument. The evidence that you wanted to offer that was excluded was relevant to coercion. I think it's relevant to all the verbs. Whatever one would like to choose out of 2422B, I think it's relevant to all of them. Because of the information, the conversations she was having, the electronic communications she was having with her friends, and with Jason, and other men she was pursuing. There was not a transformation of her will, Dinkra. There was- she was not- I'm not saying that. Dinkra doesn't say that. Dinkra is, I think, one of the things that- there's a soundbite in Dinkra, if I can call it a soundbite, that says the victim's willingness to engage in sexual activity is irrelevant. That's a- And he is the distinction, Your Honor. I don't- I think under the trial court, and the government is arguing that under 412A2, that this was an argument that he was trying to get into sexual predisposition. I believe that is not what defense counsel was arguing, and it is certainly not what I'm arguing here. I'm arguing that he had the right, despite whether- that now we have this intersection where A2 intersects with B1C, that he had a constitutional right to present a defense. And where it intersects with A2, sexual predisposition, the court- the trial court must yield to the defendant and allow him to present a defense, and to cross-examine the witness. I'm not sure you're hearing this. My premise is that I think your client had a right to, at least for purposes of this hypothetical, a right to introduce evidence that would have negated an offense- an element of the offense. Correct. I'm asking you to address essentially harmless error. There's other elements that he was charged with here, and it seems to me there was ample evidence that satisfied these other elements. I'm not sure you're getting to that point. Right. I don't believe it was harmless. I don't think removing a defense and making an element of a crime superfluous is harmless. The jury was given that charge. The jury was given all of those verbs. They could have picked any one of them. That's right. He had the right to negate whatever- Do you want to save any time? Yeah, I'm going to save time, yes. Thank you. Can I just ask- Yes. Is your premise that all of these verbs are synonymous? They're very close, Judge. All right. They're very close. Okay. I'll give you two minutes for rebuttal. Thank you. Thanks. Good morning. Good morning, Your Honors. And may it please the Court, Ross Goldman for the United States. You can sort of see where we're focused right now, so maybe you can pick up there. I was a trial judge. I was a prosecutor. I think I probably would have let in that evidence at the website. I don't know why you fought so hard about the whole thing, but the standard is abuse of discretion. So part of me says, well, okay, another judge does it differently. But it seems like much ado about nothing. I don't know why the prosecution was fighting so hard to keep out that website because I don't think it would have made a jot of difference, and that's the harmless error argument. I would agree with Your Honor that it won't make a difference. But why did she think it was so damaging? Because even though she got on the stand and she admitted everything, this guy didn't make me do anything. The jury had the whole picture of this is a 15-year-old girl that, you know, that is willing to do acts, you know, sexual acts, send in pictures for $400, and then another time for $300. She wants a phone. She gets a phone. She goes willingly on her. You know, she gets picked up. She goes three hours away, the whole thing. And she says, no, he didn't make me do anything I didn't want to do. I was a willing partner. So what's so damaging about this website? So just to step back for a minute, the evidence that was proffered was not just evidence about the website. It was in the focus of what Mr. Taylor wanted to admit were Instagram chats between the victim and her friends in which she was expressing, you know, happiness that she had found a sugar daddy out of herself, and she succeeded. All of the things that he said, she said. Opposition, as we explained in our briefing, as we argued to the district court, is that 412A precluded the use of that evidence because it was being offered to prove that she wanted to engage in a sex-for-money relationship. So, counsel, the government in the indictment that it presented to the grand jury picked all four verbs in the statute, right? That's right. And you didn't have to, right? You didn't have to put coercive. I think that's probably right, yes. And then the government's proposed jury instruction, it put in all four verbs, right? Yes. So the government says in its brief at page 36, Taylor's proffered evidence arguably might have been relevant to disprove that he coerced. I think it's 100% relevant to disprove that he coerced. I'm just sort of mystified by the government's position here. It put coerced in the indictment. It put coerced in the jury instruction. It admits that the evidence was relevant to coerced or arguably relevant to coerced and it convinced the judge to keep it out. I don't understand how that couldn't have been error when it goes to exactly what the government put in the indictment. So I think the government would be attractive to harmlessness because I understand and I do understand the court's concern. Again, we think the evidence was pretty clearly inadmissible under 412A and I don't actually take Mr. Taylor much to dispute that. The dispute is under 412B1C, whether keeping that evidence out deprived him of his constitutional right to present a defense. And I think it's important as we think about how. Well, so there's two counts of conviction. Well, so if I can just step back for a minute, I think it's completely irrelevant on the, he's saying this evidence is relevant to all the verbs in both counts. The evidence is completely irrelevant to the 1591 count. All we had to prove was that with respect that she was a minor, there was no need to prove any of the other verbs because this wasn't a forced, rightful version of the case. So about 2422B, I understand. The constitutional right to present a defense, the Supreme Court has made clear, does not allow a defendant necessarily to present evidence that's either irrelevant or only marginally relevant. And so that was where the district court had to make this discretionary call. But I do want to make sure I make clear on the harmless error point. The evidence was being offered in support of a proposition that was fully consistent with the government's, not only our own theory of the case as we generally argued it, but more importantly with the evidence that we ourselves elicited from the victim where she testified very directly, I did not feel like I was coerced. I felt, he told me, and I felt I could stop at any minute. I didn't have to go through with the sex. I didn't have to take the drugs. She called him a father figure, one of the only people that she felt really cared about him and was providing for him. So there was no evidence that she was coerced. My only pause, Your Honor, is because in the context of minors who are being sexually victimized, there is some question I think about what coercion means with respect to someone who cannot consent. But if coercion means in this context force against will, then sure. I would concede that. Did the district court instruct the jury, presumably at the government's request, that terms like coercion just simply have their natural everyday meaning? That was the instruction. So what was the evidence the government presented? Did the government present any evidence to the grand jury? I'm not asking you to disclose any grand jury secret information. Did the government present any evidence to the grand jury that this woman, this minor, was coerced in the usual and normal sense of the word? Your Honor, I don't know. I don't believe that the grand jury minutes are in the record. I've not seen them. But what I would say is the claim that's being raised here is an evidentiary claim. There's no claim that there was an instructional error or that there was insufficient evidence to support a conviction on any of these verbs. Those claims were not made in district court, and they're not made in this court. This is a pure evidentiary error. And so even if, again, the evidence that was being proffered, even if it's relevant to coercion, it would have been relevant to proving a point that our own evidence had essentially already conclusively established, which is to say she did this because she in her mind wanted to and did not feel coerced. I think that's Judge Callahan's point. I'm sorry? I think that's Judge Callahan's point. But I don't think that's why it's harmless. It's because it would be... Maybe I lost the thread. The point is that it is harmless. Oh, I understand. The evidence that was being put forward, including these instrument tabs, and to be clear, Mr. Taylor, although he highlighted some in that, having said he keeps our most relevant, that's what he says in the district court, he was planning to put all of that stuff in. And 412-884 is meant to protect victims of sexual sort of violence or child sex victims of the embarrassment and shame that would come along with having their histories fronted publicly for the jury and just generally publicly. So there is a clear sort of policy behind that rule that the government was articulating. That was really the reason to keep it out. The rule provides for that evidence to be excluded unless it is necessary for the defendant to present. And that goes to Judge Bennett's point, which is that the government wasn't obligated to charge all four verbs in its indictment, but did. And so I'm not sure why this doesn't go along with that territory. If this court opts to resolve this issue on harmless grounds, I mean, that would be, I think, a reasonable course to take here. Again, I think the evidence is pretty clearly harmless, both because it was cumulative of a point, again, that was already fully established by the victim herself, and because the weight of the evidence was overwhelming, as the court noted. The weight of it was overwhelming that Mr. Taylor, in fact, was the one who at the very least induced and enticed the victim to engage in this sex-for-money relationship. And so those would be the sort of twin ways to think about the harmless error analysis. I did these kind of cases as a prosecutor. I heard a lot of them, and I don't think any jury would have thought for one moment that Mr. Taylor was in any better position because she decided she wanted to be a sugar baby to a sugar daddy. I mean, jurors aren't going to like the fact that you've got a man in his 40s taking a girl three hours away and giving her money and all of that, and they're not going to like it. And he, you know, I have to, so I'm having, it does seem odd that there was such a fight over it because this victim wasn't, she wasn't really that concerned about how she was going to be portrayed or whatever, if that was the... I don't, with respect to her, I don't know that the record necessarily shows that she wasn't concerned. I mean, she testified at trial, and so that's obviously true. But again, the rule is... But she didn't backtrack, and she didn't. She just basically said, I did what I did, and these were the reasons I did it, and Mr. Taylor's not a bad guy, and, you know, it's... But it doesn't excuse him for the crime. For sure, it doesn't excuse him for the crime. I think the top line harmlessness point here, again, just to reiterate, I think there are actually two. One is the evidence was offered to prove a fact that we had ourselves already established, and two, the evidence was overwhelming that he had induced and enticed her. So another way to think about the harmless error inquiry, whether it's thought of through the constitutional beyond a reasonable doubt or the non-constitutional more probable than not, the basic inquiry is what is the likelihood that the jury would have acquitted on the 24-22B count if only the evidence of these chats had come in? And I think that the likelihood is almost zero. That's why I left town. Because... Right, because... Can I interrupt you because I think you've answered our question repeatedly, and there's a little time left on the clock, and I'm interested to hear about your response to the Miranda argument. The judge decided that there was not a custodial interrogation here. I just want to follow up a bit. This was in time of COVID arraignment by video, is that right? Yes. So it was two different locations. The defense counsel was not co-located with the defendant, as I understand it. The defense counsel was on the phone. The defendant was picked by video, and then the court was wherever the court was. Okay, so could you address the custodial part of the non-custodial interrogation ruling? Yeah, so I just want to be clear. I don't think the court made an actual non-custodial interrogation ruling. The issue that was presented for the district court was a 403 issue. It was not a Miranda issue. There was a, and that's our top line argument on this point, which is it's waived under Rule 12. But the district, and Mr. Taylor points to a district court line where the court says, this is at ER 35, it's not disputed that the defendant was not in custody, and the statement was voluntarily made. Now, Mr. Taylor now says, and he may well be right about this, that he was in custody. But the fact that he did not. Yeah, right. Right. That's what the record says. So, sure. But the very fact that the district court said it's undisputed that he was not in custody and there was no objection from defense counsel or anything saying, you know, you're under the weight, I think amplifies our point that no one was thinking about Miranda at the time. Even if people were thinking about Miranda, was this in response to any type of interrogation by anybody? I mean, as I read the transcript, the magistrate judge says something, the defendant says, Your Honor, if I could just speak for a minute, and the magistrate judge says yes, and then he goes on and says this was an isolated incident. I mean, even if this were custodial, doesn't there have to be an interrogation? Well, 100%. It's a much easier way to go about this. Because, if anything, it seems to me the only difference is that, you know, typically we'd have a defense attorney falling all over themselves. But the defense attorney was on the phone, was not co-located with the defendant, I think, is how this actually played out, right? That is right. Okay. Well, the defense attorney probably thought he was trying to get out of custody and probably thought he wanted to say more about his, you know, his ties to the community. I go to church all the time. I do this, that, and the other. But then instead he says, Mr. Taylor not being the sharpest knife in the drawer at that point, oh, it was only an isolated incident, so it's not so bad that I had sex with a 15-year-old and paid her $400 to show me nude pictures and have sex with me and go three hours. Right. Yeah, right. In our top-line argument, Judge Bennett, to be clear, is we think that the easiest way to resolve this case is that there was no interrogation for purposes of Miranda. We don't actually fight the custodial points at all. That's all I was asking. Yes, that's right. I'm happy to answer any additional questions if the court has them. Otherwise, we would ask the court to affirm. All right. Thank you. Thank you. All right. You have two minutes for rebuttal. Thank you. Judge, there does not have to be an interrogation. Anything that would evoke an incriminating statement is. . . But what evoked anything? He asked the magistrate, may I speak? Well. . . If anything, why read the transcript just so you can, you know. . . My argument is Miranda. If anything, the magistrate stopped him. Yeah. No, the magistrate did not stop him. We have to zoom out a little bit. We have to look at the entirety, the context of that transcript. Prior to that question, may I speak, there were 19 previous questions. I know that defendants, when the judge is speaking to them and asks them questions, they feel compelled to respond. The person that holds the power to either release them or keep them in jail is asking them a question. They are compelled to respond. That is not a voluntary statement. That's not asking questions about the underlying offense, which would have been an interrogation. You know, tell me about what you did and this, that, and other, and I want to see how bad this is. Agreed. The judge was just deciding, do you stay in custody or do you get out? Agreed. However. . . However. . . I agree with Your Honor. However. . . I mean, it's a nightmare for a defense counsel to have a client do this. Definitely. And you would have bleeped on him had you been there in person or put your hand over his mouth. And here's the substance of my argument. The judge created a colloquy, not that she was asking substantive questions, but she was, after she read him his rights, she was creating this volley of conversation, even though they were just simplistic, you know, administrative questions. The magistrate judge said, I don't see this as a case that's appropriate for bond, and so I'm going to order that the defendant be detained. And so the magistrate judge was done. And at that point, after the magistrate judge announced it's a she, announced her ruling, your client said, Your Honor, if I could just speak for a moment. So even if, in your view, there were prior interrogations, this was just, I announced my ruling, well, Judge, can I just speak so I don't see how I'm going to hold you on bond and detain you could possibly be an interrogation. Judge, I see my time is up. May I respond? Judge, as lawyers, we can say that, that we can go through that analysis in our minds, that here's where the questioning stopped, and here's where his voluntariness began. That is not how a defendant sees it, and it must be from his perspective. He must be knowingly and voluntarily abandoning this right and understanding the consequences of abandoning that right. And when he asks the question, Judge, may I speak? And the judge permits him to speak, and tacitly, his attorney permits him to speak. He believed he was speaking without consequences, with impunity. Oh, I don't think that's true. I mean, I've been a person a long time, and just, you know, and everyone's all, there's a whole bunch of people, they're all in custody, they're all, you know, all of those things you're already worked up. And you really think that the judge is your friend? No, well, if he asks the judge, the judge is supposed to be neutral. May I speak? May I speak? Sure, go ahead. Well, but if he said, no, you can't say anything, then you would argue, well, the judge didn't listen, received all the information on the bond. The judge should have stopped him and referred to his attorney. Certainly we have, and I didn't bring this argument, but certainly we have an argument for ineffective assistance of counsel. I know certain folks don't like to hear that. Well, shouldn't the attorney say, no, you shouldn't speak, I'm here to speak? Both of them. Both the judge and the attorney have a different relationship than the judge does. The judge is playing the courtroom, just moving people through. But anyway, we're over on your time. Yes, ma'am. I think you've answered our questions. We appreciate both of your arguments. This matter will be submitted.
judges: CALLAHAN, CHRISTEN, BENNETT